IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

MARIE PAPALE                                                                          PLAINTIFF

VERSUS                                         CIVIL ACTION NO: 1:09cv611 HSO-JMR

THE UNITED STATES OF AMERICA                                       DEFENDANT

**FINDINGS OF FACT AND CONCLUSIONS OF LAW
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 52**

THIS CAUSE came before the Court on October 28, 2010, for trial without a jury. This civil action was filed pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§1346(b), 2671. During the trial, the Court admitted into evidence documentary exhibits and accepted testimony, both live and by deposition, from the witnesses. The Court, having heard and considered all of the evidence in this case, as well as the arguments of counsel, having observed the presence and demeanor of the witnesses, and having carefully read and considered the proposed findings of fact and conclusions of law submitted by the parties, now by a preponderance of the evidence makes the following Findings of Fact and arrives at the following Conclusions of Law:

I.   FINDINGS OF FACT

A.   Procedural History and Factual Background

1.     On August 3, 2009, Plaintiff Marie Papale ["Papale"] filed a Complaint against the United States of America ["Government"] under the Federal Tort Claims Act ["FTCA"], 28 U.S.C. §§1346 and 2671, *et seq*. Papale brings this

personal injury action against the Government for injuries she allegedly sustained on March 20, 2007, when she tripped over a wooden pallet in the gymnasium of the Youth Center on Keesler Air Force Base ["KAFB"], in Biloxi, Mississippi. At the time of the incident, Papale was a 43-year-old female employed part-time by the KAFB Youth Center as a gymnastics and tumbling instructor. She also worked full-time as a preschool teacher at Nativity Elementary School in Biloxi, Mississippi.[1]

2.	Papale testified that at approximately 4:00 p.m. on March 20, 2007, she arrived at the Youth Center to teach her gymnastics class. Her daughter accompanied her to the gymnasium that day. According to Papale, as she turned to the right as she entered the gymnasium, her right foot struck a wooden pallet, causing her to fall. According to Papale, the pallet was inside the doorway to the gym. After her fall, Papale picked up the pallet and brought it out of the gymnasium and into the reception area.

3.	Papale did not immediately seek medical care or treatment for pain associated with the fall, although she testified that she experienced shoulder pain and a lump at the back of her neck. Papale's first visit to see a doctor for these complaints occurred in July 2007, approximately four months after the incident.

4.	Papale's daughter testified that she accompanied her mother to the KAFB Youth Center on March 20, 2007. She stated that after she and her mother passed

---

[1] In 2007, Papale was in her eleventh year of teaching, and had been instructing gymnastics for over thirty years.

through the double doorway from the reception area and into the gymnasium, there was a pallet on the floor, approximately 1 ½ feet from the double doorway. She was walking behind her mother, and while she did not see the actual fall, she did see her mother on the floor after the fall.

5.      Juanita Harper was employed as the Assistant Program Director for the Keesler Youth Center in 2007. Harper served as the safety monitor for the facility and prepared a mishap report following Papale's fall.[2] Ex. P-1. According to Harper, the Youth Center received a shipment consisting of a pallet of copy machine paper at approximately 9:30 a.m. on the morning of the incident. The wooden pallet on which the paper arrived was initially placed in the entry hallway, or reception area. Because Harper was concerned that the pallet posed a "tripping hazard," at around 10:30 a.m. she asked the Director, Rodney Hedgecock, to remove the pallet from the reception area.[3] Harper testified that normally such pallets from deliveries are moved to the dumpster recycle area outside the building. At the time, Harper assumed that was where the pallet would be taken.

6.      Later that afternoon, at approximately 3:30 p.m., a fire drill took place at the

---

[2] Harper's duties included keeping the building free of tripping hazards, wires, garbage, chairs, and ladders, and ensuring that doors were unlocked and lights were on in all areas being used. Harper performed daily walkthroughs and monthly inspections.

[3] Mr. Hedgecock was the only male employee at the Youth Center on March 20, 2007.

Youth Center.[4]  Following the drill, Harper opened all of the doors.  Upon entering the gymnasium, she observed the same wooden pallet, delivered that morning, leaning against a wall in the gym.  Harper wanted the pallet removed from the area; however, before she could accomplish this, Papale fell.  She reported the incident to Harper.  Harper testified that she knew that: 1) the pallet was a hazard; 2) it should not have been in the gymnasium; and 3) it was not removed until after Papale's fall that same day.  According to Harper, Papale taught and completed her class that day, and also completed her teaching contract with KAFB through September 2007.

7.  Rodney Hedgecock, the Director of the Youth Center, managed and oversaw the general operation of the facility.  He testified that he recalled moving the pallet in question from the foyer and placing it inside the gymnasium, approximately two to three feet inside the door.  When asked whether the pallet presented a safety concern, Hedgecock acknowledged that "it could be." Tr. at p. 95.  He was uncertain as to why he did not initially move the pallet to the dumpster area, and indicated that at the time, he was preoccupied with other management issues occurring that day.  Hedgecock further indicated that, at the time, he did not consider the pallet to be a safety issue.

**B.  Papale's Medical History and Treatment**

8.  Papale submitted evidence of her medical history and treatment in the form

---

[4]Papale was unaware that a fire drill had taken place earlier in the day.

of medical records and the deposition of Dr. Charles Winters, M.D., Papale's treating physician. On July 26, 2007, Papale presented herself to the emergency room at Biloxi Regional Medical Center, having experienced an acute onset of sharp pain with tingling in her fingers. Papale informed emergency room personnel that she had injured her neck and shoulder at work some months ago and that she had a sudden onset of pain symptoms while walking in her yard.

9. Dr. Wame Waggenspack, a orthopaedist at Bienville Orthopaedic Specialists, LLC, examined Papale on July 31, 2007. Papale advised Dr. Waggenspack that she had tripped over a pallet at KAFB and fallen on her left side in March 2007. Dr. Waggenspack concluded that there was a strong likelihood that Papale suffered from a herniated disc in her neck, and ordered an MRI for further evaluation.

10. Papale underwent the MRI testing, which confirmed Waggenspack's diagnosis of a herniated disc in her neck. Dr. Waggenspack recommended a trial of epidural injections which, according to the medical records, provided Papale limited relief. Dr. Waggenspack then referred Papale to Dr. Charles Winters, an orthopaedic surgeon, for further evaluation.

11. Dr. Winters, who testified by deposition, saw Papale in November 2007. Dr. Winters discerned from Dr. Waggenspack's records that Papale continued to experience neck and back pain, which she attributed to aggravation of her injuries from the March 20, 2007, fall over the pallet. Dr. Winters opined that it was not uncommon for a herniated disc to worsen after the initial onset of injury, and that this could occur over a period of years or over a period of a couple of months. Ex. P-

7 at pp. 19-20.  The record is devoid of any medical evidence contradicting this opinion.  Following his examination, Dr. Winters recommended surgical correction.  He performed an anterior cervical discectomy and fusion in late November 2007.  *Id.* at p. 10.  Post-surgery, Dr. Winters assigned Papale a 9% overall impairment rating.  *Id.* at pp. 14-15.

12.     With respect to her present condition, Papale testified that she is unable to care for or feed her horses located on her property in Saucier, Mississippi.   She cannot lift a 50 pound bag of feed, nor is she able to ride as she did prior to the accident and her subsequent surgery.  Papale stated that she continues to teach at Nativity and is currently employed part-time, as a gymnastics instructor, by Dreamworks in Ocean Springs, Mississippi.

13.     Chris Papale, Marie Papale's husband, testified that in 26 years of marriage, he had never heard his wife complain of pain until after her fall on March 20, 2007.  He indicated that following the fall, he took over all the household chores, including cooking and cleaning, and that he had to dress and drive his wife.  According to his testimony, while Papale's subsequent neck surgery helped with pain management, she continued to have limited movement and range post-surgery, and a marked decrease in her strength levels.

14.     Dr. Winters' testimony, when considered in conjunction with the foregoing testimony concerning Papale's pre-fall and post-fall health and physical activities, leads the Court to conclude that the March 20, 2007, fall caused Papale to suffer a ruptured disc, which subsequently necessitated her need for surgery.  Ex. P-7 at p.

## II. CONCLUSIONS OF LAW

### A. Jurisdiction and Controlling Law

15. The Court has jurisdiction over this matter pursuant to the Federal Tort Claims Act, 28 U.S.C. §§1346 and 2671, *et seq*. The underlying claim in this cause of action is one of negligence. The United States Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State-the source of substantive liability under the FTCA." *Linn v. United States*, 281 Fed. App'x 339, 346 (5th Cir. 2008)(*quoting FDIC v. Meyer*, 510 U.S. 471, 478 (1994)). "[W]hether the United States is liable for a 'negligent or wrongful act or omission of any employee of the Government' under the FTCA is generally determined 'in accordance with the law of the place where the act or omission occurred.'" *Id*. at 345 (*quoting* § 1346(b)(1)). Because the alleged negligence occurred in Mississippi, its substantive law governs this action. 28 U.S.C. §2674; *see also Hatahley v. United States*, 351 U.S. 173 (1956).

### B. Negligence Claim under the FTCA

16. Under Mississippi law, to recover in a negligence action a plaintiff has the burden to prove by a preponderance of the evidence that the defendant had a legal duty, that the legal duty was breached by the defendant's failure to conform to the required standard of care, that the defendant's breach proximately caused an injury to the plaintiff, and that damage to the plaintiff resulted. *Little v. Miller*, 909 So. 2d 1256, 1259 (Miss. Ct. App. 2005)(*citing Foster by Foster v. Bass*, 575 So. 2d 967, 972

(Miss. 1990)). In the context of a premises liability case, an invitee is a person who "goes upon the premises of another in answer to the express or implied invitation of the owner or occupant for their mutual benefit or advantage." *Hoffman v. Planters Gin Co., Inc.*, 358 So. 2d 1008, 1011 (Miss. 1978). The Court concludes that, based on the facts, Papale was an invitee under Mississippi law.

17. "While the owner of a premises, under Mississippi law, generally has a duty to use reasonable care to keep its premises in a reasonably safe condition for business invitees, the owner is not an insurer of the invitee's safety." *Robbins v. Computer Sciences Corp.*, 486 F. Supp. 2d 581, 587 (S.D. Miss. 2007); *see also Pigg v. Express Hotel Partners, LLC*, 991 So. 2d 1197, 1199-1200 (Miss. 2008).

18. In Mississippi, a plaintiff's premises liability claim can be grounded in one of three theories:

> (1) that defendant's own negligence created a dangerous condition which caused plaintiff's injury; (2) that defendant had actual knowledge of a condition which defendant itself did not cause, but defendant failed to adequately warn plaintiff of the danger she faced as an invitee; or (3) that, based upon the passage of time, defendant should have known of the dangerous condition caused by another party if defendant had acted reasonably, i.e., constructive knowledge of the condition should be imputed to defendant.

*Vu v. Clayton*, 765 So. 2d 1253, 1255 (Miss. 2000). According to *Vu*, the property owner owes an invitee the duty to keep the premises reasonably safe and to warn only when there is a hidden danger or one that is not in plain and open view. *Id.* at 1255. The premises owner is not an insurer against all injuries, and the invitee is required to exercise that degree of care for his own

safety which a person of ordinary intelligence would exercise under the same or similar circumstances. *Id.* at 1255.

19. The Government avers that Papale was negligent. Specifically:

> her failure to exercise care and prudence with regard to an open and obvious condition that a person of ordinary intelligence would exercise under the same or similar circumstances was the proximate cause of and/or contributed to her alleged injuries.

Pretrial Order at p. 9.

It has been established that where "a defendant negligently creates an unreasonably unsafe condition in an area where the plaintiff has every right to be, that defendant may not escape liability by arguing that the condition was open and obvious." *Bell v. City of Bay St. Louis,* 467 So. 2d 657, 664 (Miss. 1985). The Mississippi Supreme Court subsequently adopted a true comparative negligence doctrine in *Tharp v. Bunge Corp.* 641 So. 2d 20 (Miss. 1994): "[i]f a dangerous condition is obvious to the plaintiff, then surely it is obvious to the defendant as well. The defendant, accordingly, should alleviate the danger." *Tharp,* 641 So. 2d at 25. *Tharp* relied on *King Soopers, Inc. v. Mitchell,* 140 Colo. 119, 342 P.2d 1006 (1959), which determined that the obviousness of danger is irrelevant where:

> the condition is one which the invitee would not expect to find in the particular place, or his attention is distracted by something on the premises, or the condition is one . . . which cannot be encountered with reasonable safety even though the invitee is aware of it.

*Tharp,* 641 So. 2d at 24.

20. In this case, Papale has proffered sufficient evidence to establish negligence under Mississippi law. First, there is sufficient evidence to conclude that the

Government created a dangerous condition when it failed to dispose of the wooden pallet within a reasonable time following its delivery. The record also demonstrates that the Government failed to warn of the pallet's location, of which it had actual knowledge. The evidence further establishes that a wooden pallet leaning against a gymnasium wall, or lying on the gymnasium floor, is a dangerous condition and one which a reasonably prudent person would not anticipate encountering when entering the Youth Center. The Court finds, as a matter of law, that the wooden pallet in question posed a dangerous condition. While the Government contends that the pallet constituted an open and obvious condition, this Court is unable to conclude as a matter of law that a reasonably prudent person could have anticipated such a danger, or that there has been sufficient evidence adduced of any negligence on the part of Papale. The pallet is not the type of hazard a person would normally anticipate encountering in a gymnasium such as the Youth Center.

**C.    Damages**

21.    This Court's assessment of damages is a finding of fact which is reviewed for clear error. *W.H. Scott Constr. Co. v. City of Jackson,* 199 F.3d 206, 219 (5th Cir.1999)(*citing Boehms v. Crowell,* 139 F.3d 452, 459 (5th Cir.1998)). Under Mississippi law, reasonable compensation for the injuries sustained by Papale as a result of the Government's negligence may include consideration of the following:

> the degree of physical injury, mental and physical pain, present and future, temporary and permanent disability, medical expenses, loss of wages and wage-earning capacity, sex, age and plaintiff's state of health.
>
> \* \* \*

> Each suit for personal injury must be decided by the facts shown in that particular case. The amount of physical injury, mental and physical pain, present and future, temporary and permanent disability, medical expenses, loss of wages and wage-earning capacity, sex, age and health of the injured plaintiff, are all variables to be considered by the jury in determining the amount of damages to be awarded.

*Woods v. Nichols*, 416 So. 2d 659, 671 (Miss. 1982).

22. In addition, this Court may consider the reasonable medical and healthcare expenses incurred and those which are reasonably certain to be incurred in the future. *See Whiteaker v. Fred's Stores of Tennessee, Inc.,* 2011 WL 475012, *4 (N.D. Miss. 2011); *Graves v. Graves*, 531 So. 2d 817, 820 (Miss. 1988); Mississippi Model Jury Instruction § 11:4. Finally, the amount, type, and duration of the injuries sustained by a plaintiff and the effect such injuries have had or will have on her enjoyment of life's activities are additional factors for the Court's consideration. *Kansas Southern Ry. v. Johnson*,798 So. 2d 374, 380-81 (Miss. 2001).

23. The record supports the conclusion that as a result of her injuries and the treatment needed for them, Papale has incurred medical bills totaling $82,358.62. Ex. P-4. The reasonableness and necessity of Papale's medical treatment is not at issue, as there is no conflicting medical evidence present in the record. The Court concludes that these expenses were reasonable and necessary, and were related to Papale's injury.

24. Papale, her spouse, and her daughter testified on the issue of damages in the form of pain and suffering. As Papale described, the accident has caused her to suffer sharp, shooting pain, and heightened levels of physical activity cause her increased discomfort. According to Papale, her pain persists post-surgery. She testified that she

is unable to lift 10 pounds, is not able to care for or feed her horses, and suffers from depression. Her pain also disrupts her ability to have restful sleep and interferes with her work and leisure activities and her relationship with her spouse. As noted above, Papale was assigned a 9% overall impairment rating by Dr. Winters. Conversely, Papale was able to complete her contract at KAFB Youth Center, and continues to teach gymnastics. Little evidence was adduced as to any limitations Papale has experienced from the standpoint of her employment.

25. Any amount to be awarded for pain and suffering depends upon a Court's observation of the plaintiff and its subjective determination of the amount needed to achieve full compensation. *Parks v. Dowell Div. of Dow Chemical Corp.,* 712 F.2d 154, 160 (5th Cir. 1983); *Hyde v. Chevron U.S.A., Inc.,* 697 F.2d 614, 632 (5th Cir. 1983); *Drake v. E.I. Dupont de Nemours & Co.,* 432 F.2d 276, 279 (5th Cir. 1970).

26. The Court, having considered the demeanor of the witnesses and in the context of the documentary evidence, as well as Dr. Winters' testimony, concludes that Papale is entitled to recover additional damages to compensate her for her pain and suffering and loss of enjoyment of life. When added to her damages of $82,358.62 in medical expenses, the Court concludes that Papale is entitled to recover damages in the total amount of $240,000.00.

### III.   CONCLUSION

27. The Court concludes that the wooden pallet present in the Youth Center gymnasium on March 20, 2007, constituted a dangerous condition; that the pallet was not timely removed from the gymnasium; that as a result of the pallet's not being

removed from the building, the Government did not exercise reasonable care; and that Papale suffered injury as a result.  There is insufficient proof of any negligence on the part of Papale.  The Court further concludes that Papale's damages as a result of this negligence total $240,000.00.

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that for the reasons stated herein, Plaintiff is entitled to recover her medical expenses of $82,358.62, along with damages for pain and suffering and loss of enjoyment of life, against the Government pursuant to the FTCA.  The Court will enter a separate judgment pursuant to Federal Rule of Civil Procedure 58, in favor of Plaintiff in the total amount of $240,000.00.

**SO ORDERED AND ADJUDGED**, this the 3rd day of March, 2011.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE